IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARYLAND STATE DEPARTMENT OF EDUCATION, DIVISION OF REHABILITATION SERVICES, | * | |
| | * | |
| Plaintiff | * | |
| vs. | * | |
| UNITED STATES DEPARTMENT OF EDUCATION, REHABILITATION SERVICES ADMINISTRATION | * | |
| | * | CIVIL ACTION NO. CCB-17-1383 |
| Defendant | * | |
| and | * | |
| PATRICIA HOMAN | * | |
| Defendant Intervenor | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF DECISION

The Court has before it Plaintiff's Amended Complaint for Judicial Review of Agency Action of the United States Department of Education Arbitration Panel Under the Randolph-Sheppard Act 20 U.S.C. §§107-107F [ECF No. 8], Intervenor-Defendant Patricia Homan's Motion to Confirm and Enforce Arbitration Award [ECF No. 29] and the materials related thereto. The Court has held a hearing and had the benefit of the arguments of counsel.[1] The Court has jurisdiction pursuant to the Randolph-Sheppard Act, 20 U.S.C. § 107d-2(a).[2]

---

1   The Court has reviewed the transcript of the hearing, which was held before the Honorable Marvin J. Garbis on May 2, 2018, before the matter was transferred to the undersigned.

2   The arbitration panel's decision "shall be subject to appeal and review as a final agency action for purposes of chapter 7 of such Title 5." 20 U.S.C. § 107d-2(a).

I.  INTRODUCTION

The Randolph-Sheppard Act ("RSA") was enacted by Congress to "enlarg[e] the economic opportunities of the blind" by giving them priority in the bidding of contracts "to operate vending facilities on any Federal property." 20 U.S.C. § 107. Although the RSA applies to all federal agencies, Congress charged the Secretary of the Department of Education ("DOE") with administering, interpreting, enforcing, and resolving disputes arising under the RSA. See 20 U.S.C. §§ 107(b), 107a, 107d-1.

Under the RSA, the Secretary designates a State Licensing Agency ("SLA") in each state to issue licenses to qualified blind persons to operate vending facilities on federal property. 20 U.S.C. § 107a(a)(5). When a federal agency procures vending-facility services, it does not contract directly with a blind vendor. The agency instead negotiates a contract directly with the SLA or solicits competitive bids for the contract. 34 C.F.R. § 395.33(b), (d). The RSA also provides for a dispute resolution process that ultimately may result in an arbitration panel's decision, which is subject to judicial review. 20 U.S.C. § 107d-2 (a).

The instant dispute arose out of a solicitation for bids for a vending facility. The solicitation was withdrawn, revised, and rebid, resulting in two different vendors believing that they properly won the contract. An arbitration panel reversed the State agency's decision, which has resulted in this judicial review.

II.  BACKGROUND

A.  The Parties

Business Enterprise of the Blind ("BEP") operates the blind vending program in Maryland pursuant to the RSA. It is a unit of the named Plaintiff, Maryland State Department of

Education, Division of Rehabilitation Services, which is the SLA and is also referred to in the record as the Division, DORS, or the State.

Patricia Homan ("Ms. Homan") is the Defendant-Intervenor. She is a licensed vendor in the BEP Program and bid on BEP's initial solicitation for Vending Facility # 25 ("VF25"). She was recommended to the Committee of Blind Vendors as the winning bidder for VF25, but thereafter, the solicitation was withdrawn, revised, and rebid, and a different vendor was selected. Ms. Homan grieved the agency's bidding process and ultimately initiated the arbitration proceeding challenging BEP's decision to withdraw, revise, and reissue the VF25 solicitation.

The named Defendant United States Department of Education is a nominal party only. As part of the agency review process, it convened the arbitration panel and sponsored[3] the arbitration that issued the decision that is the subject of this judicial review.

### B. The Blind Vendor Program

The Randolph-Sheppard Act, 20 U.S.C. §§ 107-107f, adopted in 1936 and amended in 1974, established a federal-state cooperative program to promote the employment of blind persons by providing for their operation of vending facilities at federal buildings. The program is overseen by the United States Department of Education, which authorizes state agencies to implement the program as well as to train and license blind persons to manage and operate vending facilities located in federal facilities. States also administer the application and bidding process by which blind vendors are awarded the right to operate such facilities. Maryland State

---

[3] Paid all reasonable costs of arbitration pursuant to 20 U.S.C. § 107d-2(d).

Department of Education, Division of Rehabilitation Services is designated as Maryland State's licensing agency (i.e., the SLA).

BEP is the unit that operates the blind vending program in Maryland with the active participation of the Committee of Blind Vendors ("Committee"). The Committee is comprised of eight elected vendors, who represent the interests of all of the licensed vendors. The Committee's responsibilities include:

> (A) participation, with the State agency, in major administrative decisions and policy and program development, (B) receiving grievances of blind licensees and serving as advocates for such licensees, (C) participation, with the State agency, in the development and administration of a transfer and promotion system for blind licensees, (D) participation, with the State agency, in developing training and retraining programs, and (E) sponsorship, with the assistance of the State agency, of meetings and instructional conferences for blind licensees.

20 U.S.C. § 107b-1(3).

### C. Bidding for Vendor Facility #25

#### 1. The Bidding Process

Procedures for the assignment of vendors to facilities are set forth in the State regulations[4] and are also available in the Administrative Manual. Md. Code. Regs. ("COMAR") § 13A.11.04.06C-E. The Administrative Manual[5] is a policy manual developed by BEP with the active participation of the Committee, and it establishes operational procedures for the blind vendor program. COMAR § 13A.11.04.02(3).

---

[4] Md. Code. Regs. 13A, ch. 11 is the chapter implementing the Maryland regulations, established pursuant to the Randolph-Sheppard Act and Md. Code Ann., Educ. §§ 21-301 to 21-303. R. 359-376.

[5] Relevant excerpts of the Administrative Manual are available in the record at R. 301-19.

According to the Administrative Manual, Section 4, when a vending facility[6] becomes available for assignment, BEP will send bid announcements (also referred to as "solicitations") to all eligible licensed vendors. The Administrative Manual Section 4.A.3 requires BEP to list the minimum assignment criteria[7] for each announcement.

In order to be assigned a vending facility, the applicant must meet the general criteria as well as the specific criteria established for that facility. R. 305. The administrative regulation describes the process for selection by BEP:

> (a) After the due date for responses, the Division shall submit to the Committee Chair the name of the applicant recommended for the assignment.
>
> (b) If the recommended applicant is not the most senior applicant, the Division shall also submit to the Committee Chair a report identifying any applicants with more seniority and the reasons for finding the applicants unqualified.
>
> (c) The Division shall also notify the applicant who is found unqualified of the reasons for the finding and the applicant's right to appear before the Committee to present information supporting qualifications for the assignment.

COMAR § 13A.11.04.06(E)(2).

---

[6] "'Vending facility' means vending machines, cafeterias, snack bars, and other retail facilities for the sale of foods, beverages, newspapers, periodicals, confections, tobacco products, and other merchandise including the sale or exchange of chances for any lottery authorized by State law and conducted by an agency of the State." COMAR § 13A.11.04.02 (31).

[7] "The Division with the active participation of the Committee shall establish written criteria for each vending facility which an applicant is required to meet in order to qualify for assignment to the vending facility. Minimum criteria for assignments are established in the Administrative Manual." COMAR § 13A.11.04.06 D(1). The Administrative Manual states that "[i]n order to be assigned a vending facility the applicant must: 1. Meet the specific criteria established for that facility by the current manager, a representative of the Committee, the Program Director and the counselor for that facility." R. 72.

If a more senior applicant who was deemed unqualified wishes to show that he or she is actually qualified, a meeting is scheduled with the Committee.[8] The Committee must agree or disagree with BEP's recommendations within seven calendar days after receipt of the recommendation, unless the time is extended by mutual agreement. COMAR § 13A.11.04.06(E)(4). If the Committee does not respond within this period, BEP's recommendation is effective. Id. If the Committee disagrees with BEP's recommendation, BEP and the Committee hold a conference to resolve the disagreement. Id. If BEP and the Committee do not resolve the disagreement, BEP's recommendation will be effective. Id. Any dissatisfied applicant may then appeal BEP's decision by requesting an administrative review under COMAR 13A.11.04.13.

2. VF25

VF25 is a convenience store, known as a dry stand,[9] at the National Institutes of Health ("NIH") in Bethesda, Maryland. On or about February 14, 2013,[10] BEP issued a solicitation for VF25 at NIH. R. 321. The solicitation for bids, under the heading "Specific Criteria," states "Must have a current Food Service Sanitation Certification." R. 322, see also R. 324 ("5. On-site manager must be certified in safe food handling, Serv-Safe Certification and employees are

---

[8] "Upon receipt of the Division's recommendation, the Committee shall schedule a meeting with the Division and the applicant found unqualified if the applicant wishes to show that the applicant is qualified." COMAR § 13A.11.04.06(E)(3).

[9] It served pre-packaged food and freshly brewed coffee. R. 83.

[10] The stipulated facts state that the date was February 14, but vendors testified that the date was February 19. Opening Br. 4 n. 2, ECF No. 30; R. 113 at ¶ 2. The date on the memorandum was February 14, 2013. R. 321. There was testimony indicating it had been mailed on February 19, 2013. R. 87-88, 191, 227.

required to have food handler certification.").[11] The bidding for VF25 closed on March 7, 2013. R.321. Ms. Homan and eight other licensed vendors submitted bids, and Ms. Homan was the third bidder in seniority. R. 83 at ¶¶ 7, 22, R. 327. However, the two bidders senior to her did not have Serv-Safe certification as required. R. 340. Since Ms. Homan's bid was the "next most senior applicant who qualifies," BEP recommended her for the assignment to VF25. COMAR § 13A.11.04.06 (D)(3). BEP notified the two unqualified senior applicants (Mr. Borja and Mr. Reyazzudin) that they were not selected.

Messrs. Borja and Reyazzudin requested a meeting with the Committee because they were senior bidders for VF25 who were passed over for failure to meet the specific criteria. R. 340. A meeting was held, and it appears that the losing bidders did not present evidence of being qualified, but instead argued that the qualification of a Serv-Safe certificate should not be required for bidding on VF25, because such certification had not historically been required and because the Committee had not been involved in the decision to add it as a specific criterion for VF25. Opening Br. 5-6, ECF No. 30; R. 158-59. The Committee made a decision to recommend to BEP that it withdraw and revise the language of the solicitation and rebid VF25. R. 297-299. The Committee recommended that the wording be modified to allow all interested vendors to become Serv-Safe certified prior to the assignment of the facility rather than requiring the certification as part of the eligibility to bid. Id.

---

[11] Historically, a dry food stand vendor had typically not required a Serv-Safe certificate. See R. 83 at ¶ 17 (finding that for at least 30 years, dry food stand vendors had not required certification). There was evidence provided that vending facility 117 in 2011 had required the certification, but there was also evidence that it was misidentified as a cafeteria. See R. 484 n.1, R. 168-69. NIH communicated by email in February 2013 that it considered making coffee to be "food prep" requiring Serv-Safe certification. R. 383-84.

BEP's notice of rebidding stated:

> This Bid is being re-submitted because of recent recommendations by NIH stating that facilities making coffee are classified as food service facilities and now are requiring all vendors and the on-site managers to have Food Service Sanitation Certifications. In the original submission of this bid, the Program errored [sic] by not allowing sufficient time for the vendor to become certified prior to signing the Operating Agreement. With the active participation of the Committee of Blind Vendors and upon their recommendation, the bid is being resubmitted with the following requirement.
>
> The vendor must have a valid Food Service Sanitation Certification (Serv-Safe) at the time of signing the Operating Agreement, or will forfeit the facility to the next qualified vendor. The Serv-Safe certification will be valid with the MBEPB for three (3) years from the date of the Serv-Safe exam[.]

R. 342. The revised announcement incorporated the Committee's recommended language. R. 343-46. There were four bids submitted, not including Ms. Homan. R. 349. Mr. Borja was then selected as the most senior qualified bidder. Am. Compl. ¶ 26, ECF No. 8.

D. The Review

1. Initial Administrative Review

Dissatisfied applicants may appeal BEP's decision by requesting an Administrative Review pursuant to COMAR § 13A.11.04.13. Ms. Homan requested a review on March 22, 2013, and an Administrative Review conference was held on Monday, April 8, 2013. R. 31. The result of the review was an Administrative Decision by Susan Schaffer, Director of the Office of Blindness and Vision Services, Maryland Division of Rehabilitation Services. R. 31-33. She discussed the chain of events and concluded that the correct process was followed, which resulted in the Committee recommending rebidding the facility in accordance with its active participation role in the process, and BEP accepting the Committee's recommendation. R.

8

33. Her decision stated that all actions taken were "in full accordance with the Administrative Manual." R. 33.

### 2. Evidentiary Hearing

In addition to the grievance processes instituted by the State agency, the RSA provides as follows:

> Any blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program may submit to a State licensing agency a request for a full evidentiary hearing, which shall be provided by such agency in accordance with section 107b(6) of this title. If such blind licensee is dissatisfied with any action taken or decision rendered as a result of such hearing, he may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

20 U.S.C. § 107d-1(a). Section 107d-2 provides that the arbitration panel's decision "shall be subject to appeal and review as a final agency action . . . ." 20 U.S.C. § 107d-2(a).

On May 14, 2013, Ms. Homan sought a full evidentiary hearing, which was conducted on September 18, 2013. The Administrative Law Judge ("ALJ") issued a proposed decision,[12] which concluded that the Administrative Decision should be reversed because BEP did not have authority to re-bid an accepted solicitation. R. 80-96. The ALJ's Conclusions and Recommendations also stated that Ms. Homan should be awarded VF25 as the most senior qualified vendor. R. 96.

However, the Assistant State Superintendant did not accept the ALJ's Conclusions and Recommendations. R. 99. Rather, she issued the Final Agency Decision of the Division of

---

[12] Issued and mailed on October 3, 2013 to Ms. Homan, the Assistant Attorney General, Education Affairs Division, and the Assistant State Superintendent of Rehabilitation Services.

9

Rehabilitation Services on October 29, 2013, reversing and modifying the proposed decision. R. 102. The Final Agency Decision adopted the facts found by the ALJ, and added one additional fact: "BEP unilaterally added the serve-safe certification requirement to the announcement the day that it was issued. It did not seek the advice of the Maryland of Blind Vendors Committee [sic] about this additional assignment criteria." R. 99. The ALJ had also found that the certification requirement was new but determined that the vendors did not need to be forewarned of new criteria. R. 83, 89. The Assistant State Superintendent determined that BEP may establish assignment criteria only with the active participation of the Committee, which it did not seek when it added the Serv-Safe certification requirement to the announcement. R. 99, 101. "Active participation" was defined as "an on-going process of negotiations between the Division and the Committee to achieve joint planning and approval of program policies, standards, and procedures before their implementation by the Division." R. 100 (quoting COMAR § 13.A.11.04.02(B)(1)). Further, the decision stated that BEP has the inherent authority to rebid an assignment when the Committee advises that the bid process was not fair to all vendors and BEP agrees, adding "I know of no law or rule that precludes a state agency from re-bidding in such circumstances." R. 101. Mr. Borja entered into an Operating Agreement for VF25 in November 2013, and he has continually operated the vending facility since that time. Opening Br. 26-27, ECF No. 30.

### 3. Arbitration

Ms. Homan was advised that she then had the right to seek judicial review under Maryland State Government Article § 10-222 and Maryland Rule 7-203 or to file a complaint with the Secretary of the United States Department of Education under the RSA, 20 U.S.C. §

107d-1, to convene a panel to arbitrate the dispute pursuant to federal law. R. 102. Ms. Homan submitted her Complaint for arbitration on November 25, 2013. R. 5.

An arbitration hearing was conducted on November 21, 2016, and post-hearing briefs completed the record on January 17, 2017. R. 522. The three-member arbitration panel[13] ("the Panel") issued its majority decision and a separate dissenting opinion on March 30, 2017. R. 521-54. The Panel ruled in Ms. Homan's favor, holding that BEP had acted beyond its authority when it failed to award VF25 to Ms. Homan. R. 544-45. The State agency was ordered to pay compensation for Ms. Homan's damages, and Ms. Homan was allowed to file for attorneys' fees. Id. The dissenting opinion stated that BEP was exercising necessary authority, and its decision was legal, rational, and reasonable. R. 553. Further, the author dissented from the award of money damages and fees based on the State's sovereign immunity. Id. After the State filed a motion for reconsideration of damages and attorneys' fees, the Panel issued its final decision denying the motion for reconsideration and awarding attorneys' fees and costs in the amount of $42,391.67 to be paid by the State. R. 746-56. It also awarded damages in the amount of $1,982.00 per month from March 7, 2013 to the date of Ms. Homan's placement in VF25.

4. Judicial Review

On May 19, 2017, the agency filed its Complaint for judicial review of the final arbitration decision. Ms. Homan has filed for confirmation and enforcement of her arbitral award in the event that the Court denies the State's appeal.

---

[13] Pursuant to the terms of the statute, Ms. Homan selected one panel member, the State selected another, and the panel members designated by Ms. Homan and the State agreed to a third independent panel member, who chaired the Panel. See 20 U.S.C. § 107d-2 (b).

11

In its Amended Complaint, the State of Maryland alleges nine Counts of error. Am. Compl. ¶¶ 55-61, ECF No. 8:

- Count I – the 11th Amendment bars the Panel from awarding retroactive money damages.

- Count II – the 11th Amendment bars the Panel from awarding attorneys' fees.

- Count III – awarding VF25 to Ms. Homan results in the eviction of Mr. Borja without due process.

- Count IV – the Panel erred by finding that the Committee exceeded its authority by recommending the BEP revise and reissue the solicitation for VF25.

- Count V – the Panel failed to consider all relevant and probative evidence in concluding that the BEP's decision to revise and reissue the solicitation was arbitrary and capricious and not supported by substantial evidence. That error makes the Panel's opinion and award itself arbitrary and capricious and constitutes an abuse of discretion and is not supported by substantial evidence.

- Count VI – the Panel erred in its June 13, 2017 Decision by denying the State's Motion for Reconsideration related to 11th Amendment sovereign immunity.

- Count VII – the Panel erred in its June 13, 2017 decision by finding that the State had waived 11th Amendment sovereign immunity by raising it for the first time in its Motion for Reconsideration.

- Count VIII – the Panel erred in its June 13, 2017 decision by granting Ms. Homan's petition to approve damages by failing to require her to meet her burden of proof through an evidentiary hearing.

- Count IX – the Panel erred in its June 13, 2017 decision by granting Ms. Homan a negative inference regarding the amount of money damages.

III. STANDARD OF REVIEW

The arbitration panel's decision "shall be subject to appeal and review as a final agency action for purposes of chapter 7 of such Title 5." 20 U.S.C. § 107d-2(a).

The parties disagree as to the standard of review. The State contends that the district court should review the arbitration decision under the Administrative Procedure Act ("APA")

standards. Ms. Homan contends that the Court should review the Panel's decision under the Federal Arbitration Act ("FAA") standards, or possibly some combination of the two standards.

The parties cite no relevant Fourth Circuit or District of Maryland decisions for the Court to consider regarding the standard of review. There is, however, an unpublished Fourth Circuit case on point, in which the Fourth Circuit reviewed a district court's grant of summary judgment on review of an arbitration panel's decision under the RSA. See Browder v. U.S. Dep't of Educ., 238 F.3d 410 (4th Cir. 2000) (per curiam) (unpublished table decision). The Browder court stated:

> The underlying arbitration panel decision we review today is deemed a final agency action under the Administrative Procedures Act ("APA"). Under the APA, we must uphold that decision if it is supported by "substantial evidence," and is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

238 F.3d 410 at *2 (citing 20 U.S.C. § 107d-2(a), and quoting 5 U.S.C. § 706(2)(A), (E)).[14]

There is also a relevant decision, although not directly on point, in which an arbitration panel had been convened to hear complaints filed by an SLA under § 107d–1(b),[15] and the State sought to enforce the panel's decision against another federal agency. See Maryland State Dep't of Educ., Div. of Rehab. Servs. v. U.S. Dep't of Veterans Affairs, 896 F. Supp. 513 (D. Md. 1995), aff'd sub nom. Maryland State Dep't of Educ. v. U.S. Dep't of Veterans Affairs, 98 F.3d 165 (4th Cir. 1996). The court interpreted the RSA with regard to an arbitration panel's remedial authority and refused to enforce a remedial order by the arbitration panel, but the court also

---

[14] Unpublished opinions are cited for the persuasiveness of their reasoning but not for any precedential value.

[15] The instant dispute is appealing a decision rendered by a panel convened pursuant to § 107d–1(a) (i.e., on behalf of a blind licensee against an SLA), rather than a panel convened pursuant to § 107d–1(b) (i.e., on behalf of an SLA against a federal agency). Both such panels, however, are subject to arbitrate the dispute pursuant to § 107d-2, which contains the relevant language regarding the review of a panel's decision. 20 U.S.C. § 107d-1.

concluded that the State had failed to show that the agency acted arbitrarily and capriciously, citing the APA scope of review. Id. at 517-18.

Other Circuits that have considered similar appeals have held that "[a]n arbitration decision under the [Randolph-Sheppard] Act is 'subject to appeal and review as a final agency action' under the standards set forth in the Administrative Procedure Act (APA)." Sauer v. U.S. Dep't of Educ., 668 F.3d 644, 650 (9th Cir. 2012) (quoting 20 U.S.C. § 107d–2(a)); see also Fillinger v. Cleveland Soc. For Blind, 591 F.2d 378, 380 (6th Cir. 1979) ("The 'final agency action' on which § 107d-2 of the Randolph-Sheppard Act premises judicial review is, by the terms of the statute, to be construed under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-703 (1976)"); Comm. of Blind Vendors v. District of Columbia, 28 F.3d 130, 131–32 (D.C. Cir. 1994) ("The arbitration panel's decision is binding and subject to judicial review as final agency action under the Administrative Procedure Act (APA). 20 U.S.C. § 107d–2(a)."); Delaware Dep't of Health & Soc. Servs., Div. for Visually Impaired v. U.S. Dep't of Educ., 772 F.2d 1123, 1128 (3d Cir. 1985) ("The cross-references to Chapters 5 and 7 of Title 5 are to the administrative procedure and judicial review provisions of the Administrative Procedure Act. In this respect section 6(a) is unique, in that it provides for a scope of judicial review considerably broader than that available under the Federal Arbitration Act.").

District courts in other circuits agree that RSA arbitration panel decisions are reviewed under the APA. See, e.g., Jones v. DeNotaris, 80 F. Supp. 3d 588, 599 (E.D. Pa. 2015)("[T]he procedures specified delimit the breadth of the very right of action—judicial review, pursuant to the Administrative Procedure Act, of the decision of the Secretary of Education's arbitration panel."); Smith v. Rhode Island State Servs. for Blind & Visually Handicapped, 581 F. Supp. 566, 572-73 (D.R.I. 1984) (declining to incorporate arbitration review principles, the court stated

that "the arbitration award is subject to review as a final agency action in pursuance of the applicable provisions of the Administrative Procedure Act."); Wisconsin Dep't of Workforce Dev., Div. of Vocational Rehab. v. U.S. Dep't of Educ., 667 F. Supp. 2d 1007, 1015–16 (W.D. Wis. 2009) ("An arbitral award under the Randolph–Sheppard Act is reviewed as a final agency action of the United States Department of Education under the standards set forth in the Administrative Procedures Act.").

The Court has found no authority to support reviewing the instant appeal under the FAA. Alternately, Ms. Homan argues that a hybrid standard of review should apply, citing Washington Metro Area Transit Auth. v. Local 689, Amalgamated Transit Union, 818 F. Supp. 2d 888, 901-02 (D. Md. 2011). The Washington Metro case, however, is not applicable here as it related to the application of the National Capital Area Interest Arbitration Standards Act, 40 U.S.C. § 18304 (under Public Buildings, Property, and Works) to the confirmation and enforcement of an arbitral award in a labor dispute. The Standards Act imposes a specific standard of review for courts reviewing final awards issued by arbitrators. Id. at 895. This case is not in an analogous position.

Accordingly, the Court will review the Panel's decision as a final agency action under the APA standard of review. Under this standard, a court shall:

> set aside agency action, findings, and conclusions found to be--
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law;
>
> (E) unsupported by substantial evidence . . . , or

(F) unwarranted by the facts . . . .

5 U.S.C. § 706 (2).

IV. DISCUSSION

Factual findings are reviewed to determine whether they are supported by substantial evidence. United Seniors Ass'n, Inc. v. Soc. Sec. Admin., 423 F.3d 397, 404 (4th Cir. 2005) (citation omitted). In this context, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (citations omitted). Here, the evidence in the record does not support the Panel's factual conclusion that "the requirement for bidders to have a Serv-Safe Certificate was not 'new.'" R. 540. This conclusion was at odds with the State agency's finding that the certification requirement was new. See R. 83 at ¶ 17, R. 99.

As support for its finding, the Panel noted that there had been solicitations in the past for a similar NIH vending facility with the same certification requirement, referring to vending facility 117 in 2011. Id. However, the evidence in the record shows that the solicitation had only required the certification because it had been misidentified as a cafeteria. See R. 148-51, 168-69, 195-96. The Panel also noted that agencies other than the NIH had certification requirements, R. 540, but such testimony does not support a finding that the NIH's requirement was not new. Also, that same witness's testimony established that NIH had not required Serv-Safe certification for his coffee stands prior to January 2014. R. 267-69.

In addition to the testimony of witnesses stating that the requirement was new, other evidence supported such a finding. For example, in the re-bid solicitation for VF25, the BEP stated: "This Bid is being re-submitted because of recent recommendations by NIH stating that

facilities making coffee are classified as food service facilities and now are requiring all vendors and the on-site managers to have Food Service Sanitation Certifications." R. 342. And the email exchange between NIH and BEP supports a finding that the requirement was new. R. 383-84. In sum, the Panel's conclusion that NIH's Serv-Safe certification requirement was not a new requirement was not based upon substantial evidence.

The Panel majority also concluded that the State agency (i.e., BEP) did not have the authority to revise and rebid a solicitation after bidding had closed absent demonstrated unfairness or irregularity, for which the Panel had determined there was no evidence. R. 543, see also R. 536-38. The Court reviews questions of law de novo. Sauer, 668 F.3d at 650 (citing 20 U.S.C. § 107d–2(a)). No special deference is accorded an arbitration panel's interpretation of the RSA. See id. ("Deference is inapplicable here because the Act does not delegate interpretive authority to the arbitration panel; instead, it gives the Secretary of Education the responsibility of administering the Act and issuing interpretive regulations." (citations omitted)).

BEP's authority is found in COMAR § 13A.11.04.01, which provides that the state agency has the "final authority and responsibility for the administration and operation of the program."[16] The assignment of vendors to a vending facility is governed by Maryland State Regulations, which provide that the Division (i.e., BEP), with the "active participation of the Committee" is responsible for establishing and maintaining "Ready-for-Assignment" lists, and

---

[16] The "Scope" description states:
> The Division of Rehabilitation Services of the State Department of Education is designated as the State agency to issue licenses to blind persons for the operation of vending facilities under the program. The Division shall have final authority and responsibility for the administration and operation of the program.

COMAR § 13A.11.04.01.

17

announces vending facility openings. COMAR § 13A.11.04.06.D. "Active participation" is defined in the State regulations:

> (2) "Active participation" means an ongoing process of negotiations between the Division and the Committee to achieve joint planning and approval of program policies, standards and procedures before their implementation by the Division. The preceding does not supersede the Division's final authority to adopt program policies and administer the program.

COMAR § 13A.11.04.02.B. With regard to a vending facility's specific criteria, the Administrative Manual, Section 4, B.4 states that "[i]n order to be assigned a vending facility the applicant must 1. Meet the specific criteria established for that facility by the current manager, a representative of the Committee, the Program Director and the counselor for that facility." R. 305.

By acting unilaterally, and failing to allow for the Committee's involvement related to VF25's new requirement, BEP was violating the imperative of active participation. The Committee expressed concern that the resulting bid process had been unfair and recommended that BEP change the date that the certification would be required from the bid date to the contract date. R. 297-99. The recommendation was reasonable and consistent with the Committee's active participation with BEP and its role in representing the interests of all blind vendors.[17]

BEP revised and re-bid the solicitation based on the Committee's recommendation. Such action was not only within its authority, but had it chosen to ignore the Committee's recommendation, it may well have been violating the State regulations and the RSA. See, e.g., Comm. of Blind Vendors v. District of Columbia, 736 F. Supp. 292, 309 (D.D.C. 1990), rev'd on other grounds, 28 F.3d 130 (D.C. Cir. 1994) (noting that the failure to allow for the Committee's active participation and ignoring its protests and concerns violated the RSA); Smith, 581 F.

---

[17] The Committee's recommendation was supported by a unanimous vote. R. 340.

Supp. at 574 (stating that RSA regulations were violated by the agency's failure to include active participation by the Committee when assembling a seniority roster for vending facility assignments).

Further, while BEP had recommended Ms. Homan to the Committee, she had not yet been assigned to VF25. The State regulations provide that after responses are received, BEP "<u>shall submit to the Committee Chair the name of the applicant recommended</u> for the assignment." COMAR § 13A.11.04.06.E (emphasis added). Once the Committee has received the information regarding the recommended applicant and any other more senior applicants that were deemed unqualified, the Committee performs a review and recommendation, during which the Committee agrees or disagrees with BEP's recommendation or makes its own recommendation. Id. If the Committee disagrees with the recommendation, they hold a conference to resolve the disagreement. Id. The award of a vending facility is not final until after the Committee's review and recommendation and resolution process, COMAR § 13A.11.04.06.E(4), and the acceptance of the award by the vendor, Administrative Manual Section 4, A.6.

The record is clear that the Committee disagreed with BEP regarding BEP's recommendation of a vendor who was not the most senior, the Committee recommended that VF25 be rebid because of the circumstances around the requirement for Serv-Safe certification, and BEP accepted the Committee's recommendation. There was uncontroverted testimony that Committee members thought it was unfair to not provide a time-frame within which vendors could meet the certification requirements. See R.87, 88-89.

Under the circumstances, it was reasonable for BEP to resolve the disagreement by accepting the Committee's recommendation to revise the solicitation and have vendors rebid.

BEP's communication regarding the revision to the vendors relayed its rationale: "In the original submission of this bid, the Program errored [sic] by not allowing sufficient time for the vendor to become certified prior to signing the Operating Agreement. With the active participation of the Committee of Blind Vendors and upon their recommendation, the bid is being resubmitted with the following [Serv-safe] requirement." R342.

Accordingly, the Court holds that BEP acted within its authority and according to the governing regulations. The Court holds that the Panel's factual finding—that the Serv-Safe Requirement was not new—was not supported by substantial evidence, and the Panel erred in finding that BEP violated the RSA and acted arbitrarily and capriciously by rebidding the solicitation. Therefore, it is unnecessary to review the damages and attorneys' fees awards, and the various legal issues presented regarding those awards.

V. CONCLUSION

For the foregoing reasons, The United States Department of Education Rehabilitation Services Administration Opinion and Award [R. 521-45] will be reversed and the award will be vacated. Intervenor-Defendant Patricia Homan's Motion to Confirm and Enforce Arbitration Award [ECF No. 29] will be DENIED. A separate Order follows.

/s/ CCB   9/25/18
Catherine C. Blake
United States District Judge